(No. 22295.—

THE PEOPLE *ex rel.* The City of Chicago, Petitioner, *vs.* THE BOARD OF COUNTY COMMISSIONERS OF COOK COUNTY, Respondent.

*Opinion filed January 31, 1934.*

WILLIAM H. SEXTON, Corporation Counsel, (LEON HORNSTEIN, and HIRAM T. GILBERT, of counsel,) for petitioner.

THOMAS J. COURTNEY, State's Attorney, (HAYDEN N. BELL, ROBERT S. CUSHMAN, and JACOB M. SHAMBERG, of counsel,) for respondent.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The People of the State, on the relation of the city of Chicago, charge in a petition filed in this court that, by section 25 of the act in relation to the municipal court of Chicago, as amended, the fees of jurors who serve in that court shall be paid out of the treasury of Cook county; that for the year 1933, the board of commissioners of Cook county appropriated $75,000 for the payment of such fees and that, although demanded, no portion of the fees of the jurors who served in the municipal court during that year has been paid. The prayer of the petition is for a writ of *mandamus* commanding the board of commissioners to pay the jurors' fees so demanded and to make the requisite appropriations for the payment of like fees in the future. The respondent, the board of commissioners of Cook county, interposed a demurrer to the petition and upon these pleadings the cause is submitted.

Section 25 of the act entitled "An act in relation to a municipal court in the city of Chicago," as amended by the act approved July 8, 1931, and consented to by a majority of the legal voters of the city of Chicago voting on the question at the election held on November 8, 1932 (Cahill's Stat. 1933, pp. 949, 950; Smith's Stat. 1933, p. 966), so far as it is pertinent to this inquiry, provides: "That the petit jurors for the trial of cases in said municipal court shall be provided by the jury commissioners of the county of Cook in the same manner and from the same lists, as near as may be, as petit jurors are provided for the circuit, superior and criminal courts of Cook county. The names of the necessary number of petit jurors required from time to time in said municipal court shall be furnished by said jury commissioners upon demand of the clerk of the municipal court and the venires for such jurors shall be directed to and served by the sheriff of Cook county at the expense of said county and the fees of said jurors

shall be paid out of the county treasury upon the certificate of the clerk of said municipal court. The number of petit jurors to be summoned from time to time shall be determined by the chief justice. * * *" Prior to the time the amendatory act became effective, section 25 provided that the fees of petit jurors for the trial of cases in the municipal court should be paid out of the city treasury.

The contentions urged by the respondent in support of its demurrer are that the amendatory act, to the extent that it charges the county of Cook with the fees of jurors who serve in the municipal court of Chicago, violates the constitution in the following respects: (a) It transcends the scope of the title to the Municipal Court act; (b) it is a local and special law regulating county affairs, and (c) it imposes the burden of taxation upon the county of Cook without the latter's consent.

Section 13 of article 4 of the constitution provides that no act shall embrace more than one subject and that shall be expressed in the title. The term "subject," in a constitutional provision of this character, is given a comprehensive meaning. It may be as broad as the legislature chooses to make it so that a single act may include all matters which have a logical or natural connection. Provisions of an act which relate, directly or indirectly, to its general subject, do not render the act vulnerable to the objection that it embraces more than one subject. Since an act may contain all matters germane to its general subject, it may include the means reasonably necessary or appropriate to the accomplishment of its purpose. The constitutional provision is not a limitation on the comprehensiveness of the subject; and to encounter the prohibition of plurality of subjects, an act must embrace discordant provisions that by no fair intendment can be considered as having any legitimate relation to each other. *People* v. *Monroe,* 349 Ill. 270; *Mammina* v. *Alexander Auto Service Co.* 333 id. 158; *People* v. *Landers,* 329 id. 453; *Swierczek* v. *Baran,*

324 id. 530; *People* v. *Stacker,* 322 id. 232; *People* v. *Solomon,* 265 id. 28; *People* v. *Sargent,* 254 id. 514.

Many acts comprising numerous sections have very broad titles. "An act to revise the law in relation to criminal jurisprudence" embraces the entire Criminal Code, and the title is not subject to constitutional objection because of its generality. (*Fuller* v. *People,* 92 Ill. 182). Among many other comprehensive acts with general titles are: "An act to provide for the incorporation of cities and villages;" "An act to revise the law relating to corporations for pecuniary profit;" "An act to revise the law in relation to counties;" "An act in regard to elections, and to provide for filling vacancies in elective offices;" "An act in relation to practice and procedure in the courts of this State;" "An act concerning public utilities;" "An act for the assessment of property and for the levy and collection of taxes;" "An act to establish and maintain a system of free schools;" and "An act to revise the law in relation to township organization." Each of these acts contains numerous provisions which, although not specifically indicated in the general title to the act, are related to or have some connection, more or less direct, with the subject of legislation.

The title of the Municipal Court act approved May 18, 1905, (Laws of 1905, p. 157), is "An act in relation to a municipal court in the city of Chicago." The manifest purpose of the legislature in the enactment of this measure was not only to establish the municipal court of Chicago, but also to define its jurisdiction, to provide for the election and appointment of its officers, and to regulate its practice and procedure. From the time the court was organized, litigants in certain classes of cases within the court's jurisdiction could avail themselves of the right of trial by jury. Manifestly, provisions for such trials and for the compensation of the jurors are germane to the subject of the Municipal Court act. The provision of section 25, prior to its amendment, requiring the fees of petit jurors

for the trial of cases in the municipal court to be paid out of the city treasury was, therefore, within the scope of the title to the act as expressed. If the title comprehended such a provision, then likewise a requirement that the fees of jurors who serve in the municipal court of Chicago shall be paid out of the county treasury does not violate section 13 of article 4 of the constitution. So far as that constitutional provision is concerned, the transfer of the burden from the city to the county cannot affect the validity of section 25 of the Municipal Court act. The title of the amendatory act, (Laws of 1931, p. 420), is "An act to amend an act entitled 'An act in relation to a municipal court in the city of Chicago,' approved May 18, 1905, as amended by subsequent acts." It will be observed that the title to the amendatory act is as broad as the title to the original act. An act to amend another act, the former setting forth the latter's title, is as broad as the act amended, and any provision which might have been inserted in the original act may be incorporated in the amendatory act without violating the constitutional provision that the subject of an act shall be expressed in the title. (*Gage* v. *City of Chicago,* 203 Ill. 26). The contention that the amendatory act assailed violates section 13 of article 4 of the constitution has no basis.

Section 22 of article 4 of the constitution prohibits the passage of local or special laws regulating county or township affairs. The respondent argues that the requirement of the amendatory act that the fees of jurors who serve in the municipal court of Chicago shall be paid out of the county treasury violates this constitutional provision. The amendment adopted on November 8, 1904, known as section 34 of article 4 of the constitution, provides that the jurisdiction and practice of municipal courts created in the city of Chicago shall be such as the General Assembly shall prescribe and that the legislature may pass all laws which it may deem requisite effectually to provide a complete sys-

tem of local municipal government in and for the city of Chicago. The creation of a municipal court is germane to the establishment of local municipal government in that city. (*City of Chicago* v. *Reeves,* 220 Ill. 274; *Miller* v. *People,* 230 id. 65). The amendment relieved the legislature from the limitations imposed by section 29 of article 6 of the constitution that all laws relating to courts shall be general and of uniform operation, and authorized the passage of the act by which the municipal court of Chicago, possessing jurisdiction and exercising powers different from other city courts, was created. (*City of Chicago* v. *Reeves,* 220 Ill. 274; *Morton* v. *Pusey,* 237 id. 26; *City of Chicago* v. *Williams,* 254 id. 360). The amendatory act under review is not a local or special law to which section 22 of article 4 of the constitution applies.

The people of the State, by the adoption of the constitution, established certain courts and authorized, through the exercise of the legislative power, the creation of certain other courts. In the absence of a constitutional provision defining it, the jurisdiction of a court, of whatever class or grade, is prescribed by legislative enactment. Statutory regulations of practice and procedure are supplemented by rules of court. The salaries of judicial officers and the fees of jurors are fixed, and the burden of their payment, however apportioned territorially, is imposed by law. The organization, jurisdiction, practice and procedure of the courts, the salaries of judges and the fees of jurors are not county affairs in the sense that a subdivision of the State government may exercise any power with respect to them. These questions are determined by the State and, obviously, the operation of the courts is a general and not a local concern. In their operation, jurors necessarily perform an important function. The amendatory act, therefore, is not a law regulating county affairs.

Section 9 of article 9 of the constitution provides that for all corporate purposes other than the making of local

improvements, all municipal corporations may be vested with authority to assess and collect taxes, but that such taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the taxes. Section 10 of the same article provides that the General Assembly shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes, but shall require that all taxable property within the limits of municipal corporations shall be taxed for the payment of debts contracted under authority of law, such taxes to be uniform as prescribed by the preceding section. The powers, duties and liabilities of municipal corporations, unless restrained by constitutional limitations, are wholly under the control of the General Assembly. (*People* v. *City of Chicago,* 351 Ill. 396; *People* v. *Lake Erie and Western Railroad Co.* 248 id. 32; *Harris* v. *Board of Supervisors,* 105 id. 445; *Town of Fox* v. *Town of Kendall,* 97 id. 72). Sections 9 and 10 of article 9 of the constitution withdraw from the legislature the power directly to impose taxes for purely local, non-governmental purposes. (1 Cooley on Taxation, (4th ed.) sec. 417, p. 919). If the purpose of a tax is local and not general, the legislature cannot compel a municipality or subdivision of the State to levy, nor can the legislature itself impose such a tax. (1 Cooley on Taxation, (4th ed.) sec. 416, p. 915; *Morgan* v. *Schusselle,* 228 Ill. 106). Corporate purposes, within the meaning of the foregoing constitutional provisions, do not include functions which a municipal corporation performs in its governmental capacity as an agency of the State. The General Assembly, therefore, may compel a municipal corporation to perform any duty which relates to the general welfare and security of the State, although the performance of the duty will create a debt to be paid by local taxation. *People* v. *City of Chicago,* 351 Ill. 396; *St. Hedwig's School* v. *Cook County,* 289 id. 432; *Chicago, Milwaukee and St. Paul Railway Co.* v.

*County of Lake,* 287 id. 337; *People* v. *County of Williamson,* 286 id. 44; *Trustees* v. *Lincoln Park Comrs.* 282 id. 348; *City of Chicago* v. *Knobel,* 232 id. 112; *City of Chicago* v. *Manhattan Cement Co.* 178 id. 372; *Board of Supervisors* v. *People,* 110 id. 511; *Town of Fox* v. *Town of Kendall,* 97 id. 72.

The administration of justice is one of the State's highest functions. For this purpose courts are established and supported. Whatever the territorial jurisdiction of a particular court may be, and however the burden of sustaining it is apportioned, its operation is primarily a concern, not of the community but of the State. The duties which jurors perform have no exclusive or peculiar relation to the corporate purposes of a municipal corporation. Section 5 of the bill of rights provides that the right of trial by jury as heretofore enjoyed shall remain inviolate. This mode of trial, developed through centuries, is a protection against the exercise of arbitrary power; and while it occasionally exemplifies the imperfections which inhere in human nature, it serves to promote the general welfare. Whether trial by jury shall be available and its cost be defrayed must not depend upon the decision of any municipality or governmental subdivision. The question concerns the State and the legislature necessarily had the power to compel the county of Cook to levy a tax to pay the fees of jurors who serve in the municipal court of Chicago. (*City of Chicago* v. *Knobel,* 232 Ill. 112). It follows that the amendatory act under review does not violate sections 9 and 10 of article 9 of the constitution.

The lawful fees of the jurors who served in the municipal court of Chicago during the year 1933 should be paid out of the appropriation made by the respondent for that purpose. Accordingly, the writ of *mandamus* commanding such payment is awarded.